Matter of Williams v Town of Lake Luzerne Zoning Bd. of Appeals (2025 NY Slip Op 04509)

Matter of Williams v Town of Lake Luzerne Zoning Bd. of Appeals

2025 NY Slip Op 04509

Decided on July 31, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 31, 2025

CV-24-0630
[*1]In the Matter of Lisa M. Williams, Appellant,
v
Town of Lake Luzerne Zoning Board of Appeals, Respondent.

Calendar Date:June 5, 2025

Before:Clark, J.P., Pritzker, Lynch, Ceresia and Fisher, JJ.

Horn Wright, LLP, Garden City (Charles Horn of counsel), for appellant.
Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Brian Reichenbach of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (Martin Auffredou, J.), entered March 15, 2024 in Warren County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioner's request for an area variance.
In 2012, petitioner acquired property from her parents located on Gailey Hill Road in the Town of Lake Luzerne, Warren County. She acquired an adjoining lot in 2018. After obtaining a demolition permit, petitioner removed the dilapidated residence from the adjoining lot and then constructed a three-bay metal garage without securing a building permit. As it turns out, the placement of an accessory structure on the adjoining lot without a principal residence violated the Town's zoning code. As suggested by the Town's zoning officer, petitioner could address that problem by consolidating the two lots, given that her parents' lot was improved by a residence. In December 2022, petitioner consolidated the lots by deed. Even so, petitioner knew that an area variance would still be required since the garage was four feet higher than the residence, i.e., the garage was 17 feet, 9 inches in height, while the residence was 13 feet, 9 inches in height. Under the zoning code, the maximum height for an accessory structure is 18 feet and cannot "exceed the height of the principal building" (Town of Lake Luzerne Zoning Code Article VI [b] [5]). The maximum building height for a dwelling is 38 feet (see Town of Lake Luzerne Zoning Code Article V [A]).
Petitioner's application for an area variance was deemed complete by respondent in April 2023. During the May 11, 2023 public hearing on the application, a neighbor who lived across the street advised that he had no objection to the request and observed that "what [petitioner] tore down was a much higher building and it was an eyesore. Probably the worst eyesore in the Town of Lake Luzerne." Two other residents also voiced support while another individual voiced objection.[FN1] Following the public hearing, and a determination that the proposal would not have a significant environmental impact, respondent denied the application, finding that the garage was out of character with and would be detrimental to the community. Respondent further determined that petitioner failed to address other feasible alternatives and that the requested variance was substantial and self-created. Petitioner commenced this CPLR article 78 proceeding to challenge that determination. Supreme Court dismissed the petition, prompting this appeal by petitioner.
"It is well settled that a decision of a zoning board of appeals may be disturbed only if it is arbitrary and capricious, irrational or wholly unsupported by the record" (Matter of Heitzman v Town of Lake George Zoning Bd. of Appeals, 309 AD2d 1126, 1127 [3d Dept 2003] [internal quotation marks, brackets, and citations omitted]). As for the governing standard, Town Law § 267-b (3) (b) provides that, in determining [*2]whether to grant an area variance, "the zoning board of appeals shall take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant." The zoning board must "also consider: (1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the [board], but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]; see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 612-613 [2004]).
As to factors (1) and (4), respondent found that the garage was incompatible with the neighborhood "as there [were] no other accessory structures in that neighborhood that [were] higher than the principal structure." That reasoning, however, merely states the context for requiring an area variance in the first place. Taken literally, respondent's reasoning would preclude any area variance because no neighboring properties required one under the particular circumstances of a height differential between the principal/accessory structures.
The relevant question presented by petitioner's application was whether a four-foot area variance would be out of character with the surrounding neighborhood in an instance, as here, where both structures are under the maximum height limit for an accessory structure and the residence is far below the height limit for a dwelling. By comparison, the residence removed from the adjacent lot was 19 feet in height. Respondent did not explain why this height differential, in context, would prove detrimental to the neighboring community. Instead, respondent emphasized that the garage was made of "steel" but there is no indication in this record that a metal garage was prohibited, and respondent had already confirmed that a variance would not have any negative environmental impact. Surprisingly, respondent also reasoned that the demolished residence was "consistent with the character of the neighborhood" even though the neighbors across the street considered it an "eyesore" and the new structure to be an improvement to the property.
As to "feasible" alternatives, the difficulty here is that the garage had already been constructed before petitioner consolidated the lots and applied for the variance. While this situation may fairly be characterized as self-created, petitioner explained that she [*3]was unable to stabilize the residence on the adjacent lot for her intended storage purposes. Moreover, neither respondent nor Supreme Court accounted for the statutory qualifier that a self-created problem, while relevant, "shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b] [5]). Nor did respondent or Supreme Court address the clear benefit to petitioner of maintaining her garage, as compared to the prospect of having to remove the structure and the attendant financial loss (compare Matter Ifrah v Utschig, 98 NY2d 304, 309 [2002]).
As to whether this area variance was substantial, respondent specified that four feet required a 29% variance. That percentage, while mathematically high, is not determinative. From a practical standpoint, it is difficult to discern how a four-foot height difference between the residence and garage would have any negative impact on the surrounding community and respondent has certainly failed to identify any actual negative impact. To the contrary, at the hearing on April 13, 2023, respondent's members recognized that the garage was "smaller in size and scope" than the residential structure that had been removed and, at the next meeting, local residents voiced support for the application for also being smaller and an improvement to the property.
Our review of the record leads us to conclude that respondent failed to properly apply the statutory balancing test. Giving due regard to the statutory factors, we conclude that respondent's determination denying the area variance is not supported by the record and is irrational (see Matter of 209 Hudson St., LLC v City of Ithaca Bd. of Zoning Appeals, 182 AD3d 851, 853 [3d Dept 2020]). The determination should be annulled and the matter remitted to respondent for the issuance of the requested area variance.
Pritzker and Fisher, JJ., concur.
Clark, J.P. (dissenting).
We respectfully dissent, as our review of the record leads us to conclude that respondent thoroughly considered the five enumerated factors, and that it denied petitioner's application for an area variance upon making the discretionary determination that the detriment to the health, safety and welfare of the community outweighed the benefit to petitioner. As such, we would affirm the judgment of Supreme Court and dismiss petitioner's application.
The pertinent facts are more fully set out in the majority's decision. Briefly, at the relevant time, petitioner owned a consolidated parcel of land located in the Town of Lake Luzerne, Warren County which contained a residence measuring 13 feet, 9 inches in height and a three-bay garage measuring 17 feet, 9 inches in height. Pursuant to the local zoning code, an accessory structure, such as the garage, may be up to 18 feet tall but "shall not exceed the height of the principal building" (Town of Lake Luzerne Zoning Code article VI [Accessory Buildings and Uses] [B] [5]). As the garage was taller than the principal building — [*4]the residence (see Town of Lake Luzerne Zoning Code Appendix B, principal building) — petitioner sought an area variance to allow the garage to remain.
Local officials are empowered to enact a zoning code which may "regulate and restrict the height, number of stories and size . . . and the location and use of buildings, structures and land," and a local zoning board of appeals such as respondent may grant variances in the application of those regulations "in harmony with their general purpose and intent, and in accordance with general or specific rules" (Town Law § 261; see Town Law § 267-b [3] [a]). These local officials "possess the familiarity with local conditions necessary to make the often[-]sensitive planning decisions which affect the development of their community," and "[j]udicial review of local zoning decisions is limited" (Matter of Cowan v Kern, 41 NY2d 591, 599 [1977]). Accordingly, "[a] determination by a zoning board may be set aside only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion, or that it merely succumbed to generalized community pressure, and will not be disturbed so long as it has a rational basis and is supported by the record" (Matter of Sticks & Stones Holding, LLC v Zoning Bd. of Appeals of the Town of Milton, 207 AD3d 855, 855-856 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; Matter of Ifrah v Utschig, 98 NY2d 304, 308 [2002]).
When reviewing an application for an area variance, a local zoning board must weigh "the benefit to the applicant if the variance is granted . . . against the detriment to the health, safety and welfare of the neighborhood or community by such grant," and consider "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]; see Town of Lake Luzerne Zoning Code article XIII [Area Variance Criteria and Standards] [B] [1]-[5]). A zoning board need not "justify its determination with supporting evidence with respect to each of the five factors, so long as its ultimate determination balancing the relevant considerations was rational" (Matter of Feinberg-Smith Assoc., Inc. v Town of Vestal Zoning Bd. of Appeals, 167 AD3d 1350, 1352 [3d Dept 2018] [internal [*5]quotation marks and citation omitted]; accord Matter of Sticks & Stones Holding, LLC v Zoning Bd. of Appeals of the Town of Milton, 207 AD3d at 856). Importantly, upon review, we may "not engage in [our] own balancing of the factors, but must yield to the [zoning board's] discretion and weighing of the evidence, even if [we] would have decided the matter differently in the first instance" (Matter of Cooperstown Eagles, LLC v Village of Cooperstown Zoning Bd. of Appeals, 161 AD3d 1433, 1438 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d at 613; Matter of Feinberg-Smith Assoc., Inc. v Town of Vestal Zoning Bd. of Appeals, 167 AD3d at 1351).
Here, the record shows that respondent deemed the application complete at its April 2023 meeting, that the matter was held open and that it was further discussed at the May 2023 and July 2023 meetings. During those meetings, respondent provided petitioner with an opportunity to be heard, accepted public commentary, conducted a review under the State Environmental Quality Review Act (hereinafter SEQRA) and considered the five statutory factors. As to the first factor, respondent noted that "there are no other similar structures which exceed the height of the principal structure in that neighborhood." In our view, this reflects respondent's consideration of its local zoning code and whether granting the instant variance would lead to an undesirable change in this neighborhood, as it would set a precedent which permits accessory structures to exceed the height of the principal building (see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d at 615; Matter of Cowan v Kern, 41 NY2d at 599; Matter of Hoots v Town of Rochester Zoning Bd. of Appeals, 206 AD3d 1210, 1213 [3d Dept 2022]; Matter of Haas Hill Prop. Owners' Assn. v Zoning Bd. of Appeals of Town of New Baltimore, 202 AD2d 895, 898 [3d Dept 1994]).
As to the second factor, petitioner's application reflected that she attempted to use a dilapidated structure that was previously on the lot for storage, but it had to be demolished because it was structurally unstable. However, as respondent found, petitioner failed to set forth any alternative method that she had considered for achieving her storage goals, and she provided no explanation as to why a shorter garage that complied with the zoning code would be insufficient to meet such goals (see Matter of Sticks & Stones Holding, LLC v Zoning Bd. of Appeals of the Town of Milton, 207 AD3d at 857; Matter of Cooperstown Eagles, LLC v Village of Cooperstown Zoning Bd. of Appeals, 161 AD3d at 1437). As to the third factor, the record supports respondent's finding that the requested variance was substantial, as the height of the garage exceeded that of the residence by four feet — a 29% variance (see e.g. Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d at 614; Matter of Hoots v Town of Rochester Zoning [*6]Bd. of Appeals, 206 AD3d at 1213).
As to the fourth factor, respondent's SEQRA review led it to issue a negative declaration. Respondent thus noted that granting the variance would have no environmental impact to the neighborhood (see Matter of 209 Hudson St., LLC v City of Ithaca Bd. of Zoning Appeals, 182 AD3d 851, 851 [3d Dept 2020]), other than the physical changes to the aesthetic conditions noted in relation to the first factor. As to the fifth factor, the record supports respondent's determination that the need for the area variance was a self-created difficulty, as petitioner made a unilateral choice to construct a garage taller than was permitted by the zoning code, without seeking the requisite permits (see Matter of Hoots v Town of Rochester Zoning Bd. of Appeals, 206 AD3d at 1213; Matter of Cooperstown Eagles, LLC v Village of Cooperstown Zoning Bd. of Appeals, 161 AD3d at 1438). As the record on appeal shows that respondent conducted a careful and thorough weighing of the requisite factors and that its decision to deny the area variance has a rational basis and is supported by the record, we would defer to respondent's exercise of its discretionary power and find that such determination was not irrational, arbitrary or an abuse of discretion (see Matter of Cooperstown Eagles, LLC v Village of Cooperstown Zoning Bd. of Appeals, 161 AD3d at 1438). Consequently, we would affirm Supreme Court's decision.
Ceresia, J., concurs.
ORDERED that the judgment is reversed, on the law, without costs, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Notably, petitioner submitted five affidavits of other neighbors who similarly supported her application for a height variance to her garage.